Honorable Eileen Cody State Representative, 34th District P.O. Box 40600 Olympia, WA 98504-0600
Dear Representative Cody:
By letter previously acknowledged, you have requested an opinion regarding the legality of certain business arrangements between physicians and pathologists. Your questions are as follows:
 1) Does RCW 19.68 prohibit a referring physician licensed to practice in Washington from charging a patient (or insurer) for diagnostic or screening services performed or supervised by a pathologist on that patient's tissue specimen an amount greater than the pathologist charged the referring physician for those services — where the pathologist is neither employed nor supervised by the referring physician?
 2) Does RCW 19.68 prohibit a referring physician licensed to practice in Washington from sending a bill to a patient (or insurer) for diagnostic or screening services performed or supervised by an independently practicing pathologist on that patient's tissue specimen — even if the referring physician does not mark up the charges of the pathologist?
 BRIEF ANSWER
We answer your first question yes and your second question no. RCW 19.68 is to be construed that licensed physicians shall only be authorized to charge or receive compensation for [originalpage 2] professional services rendered if such services are "actually rendered" by the licensee. RCW 19.68.040. Therefore, a physician could charge for actual services of taking tissue samples for a biopsy, as well as preparing the sample and any associated costs, such as shipping the sample to a pathologist. A physician could also charge for the actual services of reviewing the pathologist's diagnosis and consulting with the patient regarding that diagnosis. A pathologist could directly bill the patient for actual services rendered, or could indirectly bill the patient through the referring physician. However, if the pathologist indirectly bills the patient through the referring physician, a physician could not "charge or receive compensation" for those specific pathology services in an amount greater than what the pathologist charges.
BACKGROUND
A physician may take a tissue specimen and refer that specimen to a pathologist for diagnosis or screening for disease. The specimen may, for example, consist of cells taken in a PAP test or during a biopsy. The pathologist, working independently of the physician in a separate office, is neither a partner in business with the physician, nor supervised by the physician, nor an employee of the physician. The pathologist is responsible for preparing the specimen, examining it, and rendering a diagnosis, or supervising a laboratory technician who screens the specimen. The pathologist sends the diagnosis or screening report and results to the referring physician.
In some cases, the pathologist is also required to send the bill for these services to the referring physician. This is a form of indirect billing by the pathologist. The physician then passes that bill through to the patient for the services of the pathologist and, according to your letter, sometimes charges the patient an amount significantly higher than the pathologist's bill.
ANALYSIS
Your two questions require an interpretation of provisions of RCW 19.68. That chapter was first enacted by Laws of 1949, ch. 204, which bears the descriptive title "AN ACT relating to rebates, refunds and unearned discounts and prescribing penalties." RCW 19.68.010(1), commonly known as the anti-kickback statute, provides that:
 It shall be unlawful for any person, firm, corporation or association, whether organized as a cooperative, or for profit or nonprofit, to pay, or offer to pay or allow, directly or indirectly, to any person licensed by the state of Washington to engage in the practice of medicine and surgery,
drugless treatment in any form, dentistry, or pharmacy and it shall be unlawful for such person to request, receive or allow, directly or indirectly, a rebate, refund, commission, unearned discount or profit by means of a credit or other valuable consideration in connection with the referral of patients to any person, firm, corporation or association, or in connection with the furnishings of medical, surgical or dental care, diagnosis, treatment or service, on the sale, rental, furnishing or supplying of clinical laboratory supplies or services of any kind, drugs, medication, or medical [original page 3] supplies, or any other goods, services or supplies prescribed for medical diagnosis, care or treatment.
(Emphasis added.) As stated in AGO 1992 No. 30, although this statute is no model of clarity, it can be reduced to three elements. For a violation to occur, (1) there must be a payment of a rebate, refund, commission, unearned discount, or profit by means of credit or other valuable consideration; (2) the payment must be in connection with the referral of patients or in connection with the furnishing of medical, surgical, or dental care, diagnosis, treatment, or service; and (3) the recipient of the payment must be a person licensed by the state of Washington to engage in the practice of medicine and surgery, drugless treatment in any form, dentistry, or pharmacy. AGO 1992 No. 30, at 3.
Additionally RCW 19.68.040 declares the intent of RCW 19.68:
 It is the intent of this chapter, and this chapter shall be so construed, that persons so licensed shall only be authorized by law to charge or receive compensation for professional services rendered if such services are actually rendered by the licensee
and not otherwise: PROVIDED, HOWEVER, That it is not intended to prohibit two or more licensees who practice their profession as copartners to charge or collect compensation for any professional services by any member of the firm, or to prohibit a licensee who employs another licensee to charge or collect compensation for professional services rendered by the employee licensee.
(Emphasis added.) RCW 19.68.010 should be construed in light of the declaration of intent in RCW 19.68.040.
The only reported decision construing RCW 19.68 is Day v.Inland Empire Optical, Inc., 76 Wn.2d 407, 456 P.2d 1011 (1969). In that case the defendants, a group of ophthalmologists, owned the entire stock of Inland Empire Optical Company, a retail optical dispensing business. The defendants practiced ophthalmology on the second floor of a Spokane building while Inland Empire Optical conducted retail business on the first floor. Clients were referred by the defendants to Inland Empire for the purchase of eyeglasses. Inland Empire Optical would bill the patients directly. As sole owners of the capital stock of Inland Empire, the defendants were entitled to all profits derived from the operation of Inland Empire, regardless of whether those profits were distributed as dividends, bonuses, salaries, etc. This retail business was not under the immediate and direct supervision of the ophthalmologists in the dispensing of eyeglasses and in filling prescriptions prescribed by RCW18.34.010. Yet, it was distributing profits to the ophthalmologists because it was under their legal and financial control.
The Supreme Court in Day stated that the enactment of RCW19.68 was meant to prohibit a "menace to the public health and welfare in the possibility of rebates, refunds, commissions, unearned discounts and profits". Id. at 414. Based on the above facts of the case, the Supreme Court held that the accumulation of profits by the defendants as the legal and [original page 4]
financial owners of Inland Empire in connection with the referral of their patients is specifically prohibited by RCW19.68.010.[1]
Under RCW 19.68, the test used to determine a valid relationship between a licensed physician and an ophthalmologist is "whether a patient of ordinary understanding and reasonable prudence should reasonably understand that eyeglasses dispensed by the ophthalmologist's dispensing optician are in fact under not only the personal and immediate direction and supervision of the ophthalmologist, but at his responsibility as well." Id. at 420. In the Day case, there was no valid relationship establishing an immediate and direct supervision of the optometrists by the physicians.
Your question presents a hypothetical where there is no valid supervisory, employee, or co-partnered relationship between a licensed physician and a pathologist. Therefore, the applicability of this analysis is limited to whether the physician is receiving a rebate or profit for the referral of patients, which is prohibited under RCW 19.68.010. Unlike the case in Day, where licensed physicians owned a company to which they referred patients, the licensed physician in your hypothetical does not have any type of ownership interest in the pathologist's business. In Day, the patient would pay Inland Empire for eyeglasses, and the physicians would profit indirectly from the valuation of their ownership in stock for that company. In your hypothetical, the patient pays the physician directly for services rendered by a pathologist.
In AGO 1992 No. 30 at page 7, we stated that there could be at least three situations in which the fees paid to a physician could not be deemed payment for services rendered and would therefore be prohibited under RCW 19.68.010: (1) if the fees paid unreasonably exceeded the fair market value of the services provided; (2) if the physician failed to provide the services called for in the contract; or (3) if the physician received payment for the same services from a different source, such as an insurer of the patient. We cautioned that any wording of a contract will not protect a physician who is actually referring patients for financial benefit and that courts look behind the description in a contract to determine whether the charges are reasonably related to actual services.
Applying these same principles, RCW 19.68 does not prohibit a physician from billing for the pathologist's service where those charges are merely being passed through the pathologist to the referring physician, and then to the patient. To avoid conflict with RCW 19.68.010, "pass through" charges should be specifically identified as relating to pathology services, and the costs of the pathologist's services must not be increased by the referring physician. Similar to what we suggested in AGO 1992 No. 30, where the physician is paid more than warranted, given the pathology services provided, this would raise an inference that the excess fees represent payment [original page 5] for something other than services. If the physician had referred a patient and offered no other persuasive explanation for the excessive charges, the probable inference would be that the payment represented a rebate, refund, commission, unearned discount, or profit in connection with the referral of patients. RCW19.68.010.
In summary, the intent of RCW 19.68 is to prohibit rebates for referring patients where no actual services are rendered by the referring physician. A physician may charge for actual services rendered related to taking the tissue sample and consulting with the patient on the pathologist's diagnosis. A charge solely based on the referral of the patient to an independent pathologist would violate RCW 19.68.
We trust this opinion will be of assistance to you.
Sincerely,
 ROB MCKENNA Attorney General
 TIMOTHY D. FORD Assistant Attorney General
[1] RCW 19.68.010 was amended in 1973, 1993, and 2003 adding the substantive portions now codified at RCW 19.68.010(2). Those portions do not prohibit ownership of a financial interest, like the type in Day, where a practitioner affirmatively discloses the interest to the patient and provides a written list of alternative facilities. While the Day court allowed the physicians to "retain ownership of their stock in Inland Empire Optical Company", it was conditioned on the physicians refraining from referring their patients to Inland Empire Optical Company.Day, 76 Wn.2d at 421. RCW 19.68.010(2) now permits such referrals with proper disclosure, but when construed in pari materia, it does not allow the charging of referral fees prohibited by RCW 19.86.010(1).